EdWarbs, Gh.
—Delivered the following’oplníóif of the court ¡-“-This is a1 suit in chariCery, for thé récó* very of láñete,- heldurider adversary titles.' Hárt’shféiA,1 who were the complainants in the court below, fotmcF their claim on the following entry: “ July* ÍA, Í781, W-illiaA’ Hoy, assignee^ &e. enters 500 acres, upon' KeA tucky river, about two miles abbve Boonsborough, be - ginning at the lower end of Tate’s bottom, rurihing sbiithy and up the river for quaritity.*’
And the defendant in the court below^ (the* appellant' here) founds his claim on the following entry J ■ “ April 28,15" 80, Isaac Ware, &c. enters 250 acres of land1, on the south side of Kentucky river, about tbrée mifeh'a-bove Boorisborough, kriowft'bythe name of Táté’sbot-ttwa»”’ It is admitted 'that Tate’s bAtbmyas’riéptéséA:* ed in the coimejcted plat; was’ rietorioiiSly knbWfe by tSai *433 same, at the dates of the respective entries of the parties; and that Boonsborough was alsó so notoriously known. ⅜ .
The defendants in this court, also “admit, that the three miles from Boonsborough, called for in Ware’s entry, ought to be measured along the river, as it meanders.” These admissions, only leave the court to decide On the sufficiency of the entries which, have been recited, and how they ought to have been surveyed.
The court will first attend to that of Hart’s heirs. This entry does not expressly point out, on which side of the Kentucky river the land lay ; but it calls for Tate’s bottom, which is shewn to be on the south side of that river; it also calls, to run south, and up the river, for quaritity ; and these expressions necessarily imply, that the land intended, lies on the south side of the river. In other respects, the entry is sufficiently explicit. The lower end of Tate’s bottom, is about two miles above Boonsborough; and beginning at that point, and running south, and up the river, for quantity, on a rational construction, ánd conformably to the principles established in many of the former decisions of this court, the survey should be extended south from the river, arid up the river, with its meanders, so far, as that ⅛ line parallel to the first line, and a line at right angles to, and from the south ends of these parallel lines, and equal in length to the side of a square containing 500 acres, would include that quantity. Then, one of these parallel lines, Will be as much shorter, as the other is longer, than thé aide of a square containing 500 acres ; and consequently, the survey will be as near a square, as the calls of the entry permit;
And this court is of Opinion, that the cdtriplaiüants in the corirt below, can recover no mdre bf Calk’s claim than is comprehended in their grant ; and Which is also comprehended within a survey, made agreeably to the foregoing directions ; and this, they can do, Only on the Supposition, that Ware’s entry, under which Calk claims, Is the youngest, dr tod Vague to be supported.
But his entry is of prior date to Hoy’s entry; and, therefore, the court will proceed td investigate its validri fjr, and if found to fie valid, fix its true situation.
This entry is somewkat obscure, which seems to arise from one of the clauses it contains not having been ar *434 ranged in its natural order. It may fairly be read thus ; Isaac Ware enters 250 acres of land, known by the name of Tate’s bottom, on the south side of Kentucky river, about three miles above Boonsborough. But taking the entry as it was made, it is evident that the locator inten - ded to appropriate the whole of Tate’s bottom, or that one part of it was contemplated as much as the other ; and that the expression “ about three miles above Boons-borough,” was only intended as a general description, to direct others where the bottom might be found ; and, *aken in this point of view, the description is good ; for it leads nearly into the middle of the bottom.
A seeming difficulty now presents itself. Must the entry be confined to the bottom ? This, the' court conceives, would be too rigid ; and also repugnant to a principle which operated in many of the former decisions of this court. The entry is for 250 acres of land ; the whole of which ought to be obtained, unless the quantity is necessarily restrained by some other call in the entry. It is evident, from the surveyor’s report, which is exhibited, that the bottom does not contain near 250 acres ; and the presumption is violent, that the intention of the locator was, to include the bottom, and to extend southwardly from the river, lor that quantity.
But it is conceived, that the only real difficulty which could arise in the mind of another candid locator, who was well acquainted with the circumstances of the case, would be, did the locator intend to run out at right angles to the general course of the river, taken between the lower and upper ends of Tate’s bottom, and from these points, equal distances, so far as a direct line would ⅛-clude the quantity ? Or did he intend, after running out at right angles, as has been mentioned, to include the quantity by a traverse line, parallel, to the meanders of the river, or which would be in every part equidistant from the river ? The first mode may be thought the most proper ; because direct lines are the most common. But in the present case, strong objections present themselves.* In this way, parts of the bottom, which cer *435 tainly was the principal object, might be left out of the survey, at the lower or upper ends, or at both ends, which, in the other way, might be included: or if it did not happen in this case, it might happen in other cases nearly similar, But it is believed, that in this case, a direct line from the lower to the upper end of the bottom, will really include more than 250 acres. And it ought to be presumed, that if high land must be included, the claimant would wish to have it adjoining to every part of the bottom, or as convenient as may be, to every part of it.
Talbot, for the appellant; Clay, for the appellee..
Besides, the idea ought not to be indulged, that the locator meant, when it is not expressed, to make an entry, which could not be laid off in one or more surveys, without some of them being liable to be caveated, for being out of legal form : and this would be more likely to happen in the first, than in the last mode. Therefore, the court is of opinion, that to avoid or lessen those difficulties, the latter mode must be embraced. That is, to run out from the lower and upper ends of Tate's bottom, and at right angles to the general course of the river, taken between the lower and upper ends of the bottom, so far as that- a traverse line, or a line in every part equidistant from the river, will include the quantity of 250 acres ⅞ and that Calk should retain so much of his former surveys, as will be comprehended within a survey thus executed; and that only so much- of his former surveys, as shall not be comprehended within a survey thus executed-, should be conveyed to Hart’s heirs, as fall- within both their entry, and4 their grant. It need only be suggested, that this opinion is different from the decree in question. — ^-Decree reversed.

 Tate’s bottom extended up the river fome diftance, and was nearly of equal width all the Way* The river made a bead adjoining the -bottom j and near to the middle of it, was confiderably further north, than at the two extremes. In confequence of this bend in the river, if lines from the upper and lower ends of the bottom had been entered, at right angles to this part of the river, so far that a ftraight line at rightanglea to thefetwo> would have wits- *435 4ed the whole of the bottom $ the furvey woul(J.hav£ alfo included fo much of the hills adjoining the middle of the bottom, as to have contained much more than 450 acres. If the endjines were contracted, fo as to give .the quantity only, the furvey would have left out a.confiderab.le portion of the bottom,, at each end thereof*